UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOHN DOWNS, III,<br>          Defendant. | Criminal No. 06-227-09 |

**DETENTION MEMORANDUM**

The Defendant, John Downs, III, also known as "J.D.", has been charged by indictment with conspiracy to distribute and possess with intent to distribute one kilogram or more of phencyclidine ("PCP"), a Schedule II controlled substance, in violation 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and § 841 (b)(1)(A)(iv); unlawful possession with intent to distribute and distribution of one kilogram or more of PCP, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv) and 18 U.S.C. § 2; unlawful distribution of one hundred grams or more of PCP in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv); and criminal forfeiture in violation of 21 U.S.C. § 853 and § 853(p).  The Government requested a detention hearing, which was held on August 9, 2006.  At the conclusion of the detention hearing, the Court found that the Defendant should be held without bond.  This memorandum is submitted to comply with the statutory obligation that "the judicial officer shall include written findings of fact and a

written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

### Findings of Fact

At the detention hearing, the Government proffered that the Defendant was involved in a conspiracy to import and distribute gallons of PCP to the Washington, DC metropolitan area from approximately September 2005 through at least July 27, 2006. According to the government, Mr. Jackson and Mr. Hopkins, as leaders of the conspiracy, purchased gallons of PCP from Mr. Tony Fitzgerald Hilt, also known as "T." Mr. Hilt, a member of the L.A. based gang Mona Park Crips, sold PCP to Mr. Jackson, Mr. Hopkins, or to various other intermediaries of the conspiracy.[1]

Mr. Jackson and Mr. Hopkins imported the PCP from California to Washington, DC by enlisting female couriers to individually transport a gallon of PCP in their checked-in luggage from Long Beach, CA to Washington, DC.[2] The couriers and the conspirators[3] would fly from Dulles International Airport ("IAD") located in Dulles, VA, to Long Beach Airport ("LGB") located in Long Beach, CA by commercial airlines. The couriers included: Ms. Tinesha Denise

---

[1] The sale transaction would occur at Mr. Hilt's home in Los Angeles, CA.

[2] After the trips were complete, Mr. Jackson and other conspirators paid the couriers for their flight, hotel and travel expenses with travelers checks, Western Union transfers, and money-grams. Many of the money grams were purchased from a Shopper's Food Warehouse grocery store, which Mr. Jackson frequents.

[3] The Government proffers that Mr. Jackson and Mr. Hopkins usually accompanied the couriers on their trips to and from California. However, at times the couriers were accompanied by other conspirators.

Adams,[4] Ms. Shawntae Anderson,[5] and Ms. Lanika Mercedes Franklin.[6]  After purchasing the PCP from Mr. Hilt, the conspirators, with the assistance of the couriers, would purchase shampoo, lotion, and Listerine bottles and empty the contents of the bottles to later fill them up with PCP.  The couriers carried these bottles in their checked in luggage on their flight back from LGB to IAD.

The flight records indicate that the conspirators made about 25 flights between the Washington, DC area to Long Beach, CA from September 2005 through at least July 27, 2006.[7]  Once the PCP was in the Washington, DC area, the conspirators would dilute the PCP with starter fluid and sell the diluted PCP to wholesalers and distributors.  The conspirators would meet to sell the PCP and exchange money at various locations in Washington, DC and suburban Maryland, including Ms. Wanda Owens'[8] apartment, Mr. Hargrove's apartment, Mr. Hopkin's father's home, and the Safari Steakhouse.  The Defendant was one of Mr. Jackson's priority customers.

---

[4] Ms. Adams made 12 trips.

[5] Ms. Anderson made 11 trips.

[6] The exact number of trips that Ms. Franklin made is unknown, however she did travel numerous times.

[7] The flight records indicate that the conspirators used JetBlue, Southwest, and AmericaWest airlines. It is estimated that at least one gallon of PCP was carried back from Long Beach on each trip, which equals about 25 gallons of undiluted PCP being imported to the Washington, DC area. One gallon of liquid PCP equals approximately 3.7 kilograms of the drug. The Government proffered that the actual amount of PCP imported actually exceeds the special allegation amount of 20 kilograms listed in the indictment.  In a superceding indictment, the Government will allege the full amount.

[8] Ms. Wanda Owens is Mr. Jackson's sister.

In May, 2006, a wiretap was placed on Mr. Jackson's phone.  Authorities heard Mr. Jackson referring to the Defendant as "J.D." The calls between the Defendant and Mr. Jackson were consistently about quantities of money and drugs.  On two occasions, Mr. Jackson informs the Defendant that couriers are arriving with PCP from California.  The Defendant responds that he will meet Mr. Jackson to purchase the PCP.  On May 21, 2006, Mr. Jackson is heard urging the Defendant to call the female couriers and to get his money ready.  A few days after that phone call, on May 24, 2006,  the couriers who arrived at IAD  were intercepted by undercover FBI agents.  The agents seized two gallons of PCP and released the couriers.  Mr. Jackson called the Defendant to inform him of the seizure and stated, "The equipment truck broke down.  The two bitches had it coming in."  Mr. Jackson also expressed his concern that the couriers were released and that they may have made a deal with the authorities.

On the day of the Defendant's arrest, he admitted to the FBI that he was involved in the conspiracy.

## **Discussion**

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* (hereinafter "the Act"), provides, in pertinent part, that if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person . . . [or] the safety of any other person and the community, such judicial officer shall order the detention of the [Defendant] before trial."  18 U.S.C. § 3142(e).  Danger to the community alone is a sufficient basis upon which to order pretrial detention, if the judicial officer finds by clear and convincing evidence that Defendant's pretrial release would constitute an unreasonable risk of danger to the community.  *United States*

*v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).  When, as here, there is probable cause to believe that a Defendant has committed a violation of the Controlled Substance Act for which a maximum penalty of 10 years or more is prescribed, a rebuttable presumption arises that the Defendant constitutes a danger to the community, and no pretrial release condition or combination of conditions may be imposed to assure his future presence in court or to reasonably assure the safety of the community.

Here, the government seeks pre-trial detention on the grounds that the Defendant poses a danger to the community and a risk of flight.  In determining whether there are conditions of release which will reasonably assure the safety of the community, the judicial officer shall take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, including the Defendant's ties to the community; and (4) the nature and seriousness of the danger to any person or to the community which would be posed by the Defendant's release. *See* 18 U.S.C. §3142(g).

The first factor, the nature and circumstances of the offense, favors detention.  The Defendant is charged with conspiracy to distribute massive amounts of PCP into the Washington, DC area.  The second factor, the weight of the evidence, also favors detention.  The Defendant was heard on the wiretap conversing in code about the PCP sales and about the FBI intercepting a shipment of PCP.  In addition, the Defendant admitted to the FBI that he was involved in the conspiracy.

The third factor, the history and characteristics of the Defendant, does not support pretrial detention. The Court has reviewed the pretrial services report and notes that the Defendant does not have any prior convictions. Additionally, the Court acknowledges that the Defendant has a supportive and responsible family. The fourth factor, the nature and seriousness of the danger to the community should the Defendant be released, also favors detention. Although the instant charges did not involve violent activity, the Defendant was heavily involved in importing a massive amount of PCP, a dangerous and illegal substance that causes violence in the Washington, DC area.

## **Conclusion**

Despite the Defendant's lack of criminal record, upon consideration of all the evidence and the factors set forth in 18 U.S.C. § 3142(g), the Court concludes that the evidence clearly and convincingly establishes that the Defendant's pretrial release would constitute an unreasonable risk of danger to the community. The presumption in favor of detention establishes by the statute has not been overcome by the Defendant in this case. Therefore, the government's motion for pretrial detention is granted and the Defendant is to be held without bond pending further actions of this court.

Dated: August _21_, 2006            _____/s/_____
                                    ALAN KAY
                                    UNITED STATES MAGISTRATE JUDGE