UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| VS. | * | Criminal No.06-227-09 (RBW) |
| (Darnell Jackson, et.al. -01) | * | Judge Reggie B. Walton |
| **JOHN DOWNS  (Defendant-09)** | * | |

**DEFENDANT'S  MOTION TO SUPPRESS STATEMENTS**

COMES NOW, the defendant, John Downs III, by undersigned counsel, and respectfully moves the Court to suppress as evidence against him any and all post-arrest statements made to law enforcement officers on August 3, 2006, on the basis that such statements were involuntary and obtained without the defendant having been advised of his Constitutional Rights in violation of the Fifth and Sixth Amendment rights as outlined by the United States Supreme Court in *Miranda v. Arizona,* **384 U.S. 436 (1966)** and *Davis v. United States,* **512 U.S. 452, 455 (1994).**  As grounds for his Motion the defendant proffers the following allegation of facts:

**I.  Allegation of Facts:**

1. On August 3, 2006, the defendant was arrested at his sister's home, 7332 Mossy Brink Court, Columbia, Maryland, by federal agents pursuant to a warrant issue by this Court.  The agents arrived at the home at approximately 10:00 a.m. and asked to speak to Mr. Downs.  The agents thereupon, arrested and handcuffed Mr. Downs, and conducted a search of his room and truck.  The agents seized property of Darnell Jackson, (a wallet, jewelry, belt and a watch) which was had been located inside of Mr. Downs truck.  These items had been returned by federal agents to a female acquaintance who was with Mr. Jackson at the time of  Jackson's arrest, who, in turn, gave the items to Mr. Downs for safekeeping .  After approximately two hours of intermittent questioning by the

FBI agents in his home in Columbia, Maryland, Mr. Downs was transported to the Washington (D.C.) Field Office of the Federal Bureau of Investigation.

2. Defendant arrived at the Washington Field Office at approximately 1:00 p.m. Mr. Downs was immediately placed in a small, windowless interrogation room and shackled by secure restraints to the wall(or floor). After approximately 25 minutes of booking procedures, Mr. Downs was returned to the interrogation room and questions by the agent with regards to the nature of his relationship with Darnell Jackson, and what role, if any, he played in Mr. Jackson's narcotics enterprise.

3. Mr. Downs asked if he could "speak to a lawyer" and was told by the agents that it was in his best interest to waive his rights because if he invoked his right to counsel the agent could not speak with him so that he might "help himself out by cooperating" and thereby receive favorable consideration from the prosecutor's office and the Court. The agents stated to Mr. Downs that "the only way they could help him, was for him to withdraw his request to speak to an attorney." At that point, Mr. Downs submitted to interrogation by the agents, and implicated himself as having resold PCP obtain from Jackson in or about Annapolis, Maryland. At the conclusion of the interrogation, Mr. Downs was present a FBI Form FD-395 (Waiver of Rights) and given *Miranda* warnings by Special Agent Tucker Vanderbunt at 2:28 p.m., on August 3, 2006.

4. At the time of his arrest John Downs III was 28 years old. Prior to August 3, 2006, this defendant had not been arrested for any criminal offense. Mr. Downs is a high school graduate who completed nearly three years of college on a basketball scholarship.

**II. Argument: Mr. Downs Statements were the Product of Custodial Interrogation and were taken Without the Advisement of *Miranda* Warnings and After he Invoked his Sixth Amendments Rights to Speak to Counsel.**

5. As a precondition to the admission of a defendant's statement which are the product of

custodial interrogation, the government must establish by a preponderance of the evidence, that the defendant was advised and understood his *Miranda* rights, and that he validly waived those rights. **384 U.S. at 478-79.** If the government cannot establish the warnings were given effectively and the waiver was made intelligently and voluntarily, the statements must be suppressed. ***See, Colorado v. Connelly,* 479 U.S. 157, 168-69 (1986).** 2. There is no question that the Court should treat these statements as the product of "custodial interrogation."

      6. Defendant submits that any alleged statements were not voluntary, but were in response to law enforcement officer's coercion and intimidation. Furthermore, defendant contends that he was not advised of his *Miranda* rights at the time the alleged statements were made. In *Miranda v. Arizona,* the Supreme Court determined that assistance of counsel should be available to protect a suspect's right against self-incrimination during custodial interrogation and consequently required exclusion of statements obtained from the suspect without affording him of such assistance." *Jackson v.United States*, **404 A.2d 911 (D.C.App.1979**). Thus the law enforcement officers were required to adequately advise the defendant of his Fifth and Sixth Amendments prior to any questioning. **See** *Michigan v. Jackson*, **106 S.Ct. 1404 (1986)**

      7. Even in cases where the *Miranda* warnings were given, the Government must demonstrate that a waiver of those Constitutional rights was voluntary, knowing, and intelligent. See *Miranda v.Arizona*, **384 U.S. 436 (1966).** In *Miranda* the Court held that "... (t)he record must show...that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything else is not a waiver." <u>*Miranda,*</u> **supra at 475**. Furthermore, the Supreme Court has held that the courts must "indulge every reasonable presumption against waiver". **See** *Brewer v. Williams*, **430 U.S. 404 (1977)**.

      7. Morever, Mr. Downs invocation of his Sixth Amendment right to counsel was not the

equivocal or ambiguous sort i.e., the "Maybe, I should speak to a lawyer" which the Supreme Court upheld in *Davis v. United States*, **512 U.S. 452, at 455 (1994)** to permit law enforcement officer to continue with interrogation. Mr. Downs, frightened and inexperienced in the criminal justice system, firmly told the FBI agents that he wanted to speak to a lawyer before any questioning began. He request was simply ignored and the agents sought to persuade him that they understood the workings of the criminal justice system better than him, and that he should take their advice as to what course was in his best interest, legally.   Under the facts in this case, the defendant was not properly given his *Miranda* warnings, nor effectively advised of his rights, and therefore did not make a knowing and voluntary waiver. Therefore the statements must be suppressed.

8. Defendant respectfully requests a hearing on this motion.

WHEREFORE, for the above reasons, and any additional reasons adduced at a hearing on this matter, defendant respectfully moves this Court to suppress all statements allegedly made to the Special Agents of the Federal Bureau of Investigation subsequent to his arrest on August 3, 2006, and prohibit their use for any purpose in this case.

Respectfully Submitted

John Downs III
By Counsel:

_____
James W. Rudasill #318113
717 D Street, N.W.
Suite 310
Washington, D.C. 20004
(202) 783-7908

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Motion for Continuance of Status Hearing was served by electronic mail-ECF-CMS to Elisabeth S. Poteat, Esq., Assistant U.S. Attorney's U.S. Attorney's Office for the District of Columbia, 555 4th Street, N.W., Washington, D.C. 20530, this 18th day of June, 2007.

      \_\_\_\_/s/ James Rudasill\_

      James W. Rudasill, Esq.