Copies to: Judge
AUSA – Special Proceedings
Dft.

*accept for filing
Judge Walton
5/2/08*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

MAY 0 2 2008

Clerk, U.S. District and
Bankruptcy Courts

| UNITED STATES OF AMERICA | * | |
|---|---|---|
| Plaintiff, | * | Crim. No. 06-227 |
| v. | * | Honorable Reggie B. Walton |
| JOHN DOWNS III, | * | |
| Defendant. | * | |

## MOTION FOR SENTENCING PURSUANT TO SAFETY VALVE
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

The Defendant, JOHN DOWNS III, *pro se*, files this Motion for Sentencing Pursuant to Safety Valve and Memorandum of Law in Support and in support of this Motion and Request for Hearing and asserts:

### I. PROCEDURAL HISTORY

On July 27, 2006, the U.S. Attorney for the District of Columbia filed a multicount indictment in this matter. Count One of the indictment charges the defendant, John Downs III, and thirteen others: Darnell A. Jackson, Troy A. Hopkins, Tony F. Hilt, Tinesha Adams, Shawntae Anderson, Lawrence Bryant, Troy J. Chavious, Christopher M. Dobbins, Lanika M. Franklin, William H. Gray, Bernie Hargrove, John Doe a/k/a Keith Roots, and Dominique M. Washington with Conspiracy to Possess with Intent to Distribute and Distribution of One Kilogram or More of Phencyclidine, in violation of Title 21, U.S.C. 846, 841 (a)(1) and 841 (b)(1)(A)(iv).

On August 3, 2006, the defendant, John Downs III, was arrested at his sister's home in Columbia, Maryland. On this same date, after his arrest, Mr. Downs made several custodial statements, after the advisement of *Miranda* rights implicating himself

as a small quantity PCP distributor in the Annapolis, Maryland area whose supplier was Darnell Jackson, the lead defendant in this matter.

James W. Rudasill, Jr. #318113, was appointed to represent Mr. Downs under the Criminal Justice Act, on or about August 3, 2006. Counsel represented Mr. Downs at his initial appearance/detention hearing, arraignment, numerous status hearings and at trial. Counsel filed pretrial motions.

Furthermore, counsel negotiated a plea with the government, on Mr. Downs's behalf, and personally participated in approximately ½ dozen debriefing meetings with Mr. Downs, Assistant U.S. Attorneys Elisa Poteat and Emery Cole, and a number of special agents assigned to the case. These negotiations were successful, to the extent that, at the conclusion of the motions hearings on September 24, 2007, government counsel placed on the record that if Mr. Downs would enter into the plea agreement on the eve of trial, he would still most likely qualify for a downward sentencing departure pu7rsuant to U.S.S.G. Sec. Sec. 5K1.1.

At trial, which began on September 25, 2007, appointed counsel called eleven witnesses at trial on behalf of Mr. Downs. Counsel's closing argument in this matter spanned more than ninety minutes over two days. Nonetheless, on November 27, 2007, the jury retuned a verdict of guilty as to Count One with respect to Mr. Downs and Troy Hopkins.

On December 4, 2007, Mr. Downs filed a Motion for New Trial. The grounds raised in the Motion for New Trial were:

1) that during deliberations, one of the jurors reported to the trial court that he felt threatened. Without any curative measures taken by the court, the Defendant was denied his constitutional right to a fair trial,

2) that the Defendant's conviction was a result of judicial misconduct, and

3) that the Defendant was denied his constitutional right to effective assistance of trial counsel.

On February 20, 2008, after a hearing, the Court ordered that Mr. Downs present a Memorandum in Support of his Motion for New Trial.

On April 25, 2008, Mr. Downs, in addition to the grounds set forth in the Motion for New Trial, filed the Memorandum in Support of his Motion for New Trial, presenting the following issues:

1) that the evidence adduced at trial was insufficient to sustain his conviction for Conspiracy to Possess with Intent to Distribute and Distribution of One Kilogram Grams or More of Phencyclidine,

2) that the trial court erred in allowing Defendant's statements provided to government during debriefing to be presented into evidence,

3) that trial counsel labored under a conflict of interest, and

4) multiple issues that trial counsel rendered ineffective assistance of counsel.

In the instant Motion, Mr. Downs presents multiple reasons why he should be sentenced under the safety valve provisions.

## II. STANDARD OF REVIEW

The application of 18 U.S.C. § 3553 (f) allows the sentencing court to disregard the statutory minimum in sentencing first time, nonviolent drug offenders who played a minor role in the offense and who "have made a good-faith effort to cooperate with the government." *United States v. Arrington*, 73 F.3d 144, 147 (7th Cir. 1996).

Under the safety valve provisions, the judge, without the threshold requirement of a motion by the prosecutor, can-indeed must-depart from the mandatory minimum sentence if he or she determines that the offender "played a minor role in the offense ... 'made a good-faith effort to cooperate with the government.'" *United States v. Ajugwo*, 82 F.3d 935 (9th Cir. 1996), *cert. denied*, 117 S. Ct. 742 (1997).

The defendant has the burden of proving, by a preponderance of the evidence, the applicability of the safety valve. *United States v. Wrenn*, 66 F.3d 1 (1st Cir. 1995); *United States v. Ivester*, 75 F.3d 182 (4th Cir. 1996); *United States v. Gambino*, 106 F.3d 1105 (2.d Cir. 1997). Specifically, § 3553 (f) provides that a court shall impose a sentence without regard to any statutory minimum if:

First Prong (criminal history)

Section 5C1.2 (1) requires that "the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines." *United States v. Resto*, 74 F.3d 22 (2nd Cir. 1996) (cannot use criminal history departure under § 4A1.3 to meet requirement of one criminal history point; departure can still be used to lower criminal history category, just not to trump mandatory minimum); *United States v. Ward*, 908 F. Supp. 350 (E.D. Va. 1995) (granting § 4A1.3 departure from history category II to I, but denying safety valve because safety deals with points, not categories); *United States v. Valencia- Andrade*, 72 F.3d 770 (9th Cir. 1995) (cannot use departure under § to move into criminal history category I under first prong).

Second Prong (use of violence or weapon)

Section 5C1.2 (2) requires that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." *United States v. Wilson*, 114 F. 3d 429 (4th Cir. 1997) (rejecting government's argument that safety valve did not apply to defendant because co-conspirators possessed guns); *In re Sealed (Sentencing Guidelines' Safety Valve)*, 105 F. 3d 1460 (D.C. Cir. 1997) (conspiratorial liability cannot establish defendant's possession of gun so as to preclude eligibility under safety valve: evidence insufficient to establish defendant's constructive possession of gun); *United States v. Hart*, 876 F. Supp. 4 (D. D.C. 1995) (in case where defendant pled only to § 841 offense, court applied safety valve; although gun was involved, court found co-defendant responsible for it where co-defendant's fingerprints on gun, co-defendant pled guilty to § 924 (c) charge, and defendant did not receive points under § 2D1.1 (b) (1)).

Third Prong (death or injury)

Section 5C1.2 (3) requires that "the offense did not result in death or serious bodily injury to any person." *United States v. Grimmett*, 150 U.S. F.3d 958 (8th Cir. 1998) (mentioning, without deciding issue, that defendant not eligible for safety relief because co-conspirator was killed during and in relation to conspiracy).

Fourth Prong (leadership role)

Section 5C1.2 (4) requires that "the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing enterprise, as defined in 21 U.S.C. § 848." *United States v. Bours*, 949 F. Supp. 362 (D. V.I. 1996) (enhancement for leadership role not appropriate where defendant merely mailed package of cocaine to partner and there was no evidence that defendant had any authority over partner or told partner how to distribute drugs); *United States v. Scholtz*, 907 F. Supp. 329 (D. Nev. 1995) (defendant qualifies for safety valve; although he may direct some people, within overall conspiracy, he is worker, not manager, organizer, leader, or supervisor).

Fifth Prong (truthful disclosure)

Section 5C1.2 (5) requires that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." *United States v. Wrenn*, 66 F. 3d 1 (1st Cir. 1995) (fifth prong requires affirmative act of cooperation by defendant); *United States v. Ortiz*, 136 F.3d 882 (2nd Cir. 1997) (mere willingness to provide information to government insufficient to meet fifth prong, defendant must actually provide information); *United States v. Sanchez*, 925 F. Supp. 1004 (S.D.N.Y. 1996) (finding that defendant met fifth prong; it was not surprising that defendant knew only first name of supplier because defendant a novice in drug business).

In *United States v. Sherpa*, 110 F.3d 656 9th Cir. 1997), the Ninth Circuit held that the district court did not clearly err in applying the safety valve after the defendant was convicted by a jury. The government argued that the jury verdict precluded a finding of truthfulness under § 5C1.2 (5) .... Safety valve could still apply even if the defendant professed his innocence throughout the proceedings, "...safety valve requires a separate judicial determination of compliance which need not be consistent with a jury's findings." *Id.* at 662.

5

## III. ARGUMENT

Mr. Downs asserts that, pursuant to § 3553 (f) - safety valve, this Court shall impose a sentence without regard for any statutory minimum. Specifically, Mr. Downs qualifies under all requirements of § 5C1.2, because:

<u>First Prong (criminal history)</u>

Simply put, Mr. Downs meets the requirements under the first prong. This being Mr. Downs's first criminal conviction, he "does not have more than 1 criminal history point."

<u>Second Prong (use of violence or weapon)</u>

Although Mr. Downs admitted that he saw co-conspirator in possession of a handgun (November 5, 2007, A.M. Session, T. 11), and the government, during the course of the trial, presented firearms confiscated from the Hopkins' residence. Mr. Downs meets the requirements under the second prong. Mr. Downs was neither charged, nor convicted of any offense involving violence or firearms. Co-conspiratorial liability cannot establish Mr. Downs's possession of a firearm so as to preclude eligibility under safety valve. Finally, the testimony adduced at trial, indicated that all firearms presented by the government, belonged to Troy Hopkins' dad, and were used for hunting purposes.

<u>Third Prong (death or injury)</u>

Simply put, Mr. Downs meets the requirements under the third prong, "the offense did not result in a death or serious bodily injury to any person."

<u>Fourth Prong (leadership role)</u>

Simply put, Mr. Downs meets the requirements under the fourth prong. Mr. Downs "was not an organizer, leader, manager, or supervisor of others in the offense." According to the government, Darnell Jackson played that role. In fact, Assistant U.S. Attorney, Elisa Poteat, made the following comments in regards to Mr. Downs's role in the offense: "For all the reasons that the Court stated much better than I can at this point at the bench about the appearance that [the conflict of interest] creates for people like Mr. Downs who – I think in fairness to Mr. Downs and Mr. Hargrove and the like, not at all similarly situated in this conspiracy than Mr. Hopkins. *They are very small potatoes compared to him, and they are not as culpable even if found guilty of amounts even*

*coming close to him; and their exposure obviously should be, even after any conviction* in *this case should that occur, should be considerably less ....* " (October 15, 2007, A.M. Session, T. 68 – October 15, 2007, P.M. Session, T. 10) (emphasis in original).

<u>Fifth Prong (truthful disclosure)</u>

Mr. Downs qualifies under the fifth prong. Mr. Downs "ha[s] made a good-faith effort to cooperate with the government" in this case. During debriefings, he provided names and details about his relationship with Mr. Jackson and others. He also provided information about a murder allegedly committed by Jackson. Although Mr. Downs maintained his innocence from the beginning, *regarding the conspiracy*, Mr. Downs never minimized his involvement and his story remained consistent throughout. Mr. Downs has always been truthful and forthcoming in his dealings with the government.

## III. CONCLUSION

Mr. Downs qualifies under all requirements to be sentenced under the safety valve without any regard for any statutory minimum. For all the foregoing reasons, Mr. Downs respectfully requests that this Court impose a sentence under the safety valve provisions.

## IV. RELIEF SOUGHT

Mr. Downs respectfully requests that this Honorable Court:

A. Order a hearing be held where he may present evidence and argument in support of this motion;

B. Allow him to freely amend this motion; and

C. Grant him such other and further relief as law and justice may require.

Respectfully submitted,

By _____
John Downs III

7

## CERTIFICATE OF SERVICE

**I HERBY CERTIFY** that on __27th, April__, 2008, a copy of the foregoing Motion was mailed first-class, postage prepaid, U.S. mail, to Elisabeth Poteat and Emory V. Cole, Assistant United States Attorneys, Narcotics Section, U.S. Attorney's Office for the District of Columbia 555 Fourth Street, N.W., Washington, D.C. 20530.

_____
John Downs III